THE RICHARDSON & BOYNTON COMPANY, a Corporation, Appellant, v. THE UTAH STOVE & HARDWARE COMPANY, a Corporation, Respondent.

### No. 1555.  (77 Pac. 1.)

**Appearance: What Constitutes: Foreign Judgment: Collateral Attack.**

Under Rev. St. 1898, section 3334, providing that a defendant appears in an action when he answers, demurs, or gives the plaintiff written notice of his appearance, and which is substantially the provision of the Illinois statute, where a corporation domiciled in Utah and sued in Illinois appeared and filed a pleading asserting that it had been sued by a wrong name, without challenging the court's jurisdiction, it submitted to the jurisdiction of the Illinois court, precluding it from assailing the judgment in an action thereon in Utah.

### (Decided June 17, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. T. D. Lewis*, Judge.

Action on a judgment. From a judgment in favor of the defendant, the plaintiff appealed.

REVERSED.

*Messrs. Sutherland, Van Cott & Allison* for appellant.

If a defendant is sued by a wrong name and he appears by his right name it is proper to declare against him in the name by which he appears. Oakley v. Giles, 3 East 167; Doo v. Butcher, 3 T. R. 611; 1 Chit. Pl. (16 Am. Ed.), 342.

In the early common law practice, when the defendant, was misnamed the proper method of taking advantage of the misnomer was by plea in abatement. 1 Chit. Pl. 245, 247.

But as early as the Statute of 3 and 4, William IV, ch. 42, sec. 11, pleas in abatement for misnomer were abolished in England, which act also provided that plaintiff's declaration might be amended by inserting the true name of the defendant. 14 Ency. Pl. and Pr., 304.

And the statute of this State permits the court to correct "a mistake in the name of the party." Rev. Stat., sec. 3005.

This statute is conclusively presumed to have been in force in Illinois. Bank v. Bank, 9 Utah 87; Sutherland, Stat. Cons., sec. 184.

And Chitty, in his work on Pleading, at page 462, says; "Where misnomer either of the plaintiff or defendant was truly pleaded the plaintiff might in general amend his declaration on payment of costs."

Such a doctrine of course means that the misnomer did not permanently abate the action, but that the amendment cured the error so that the action could proceed.

At common law the power to amend in case of a misnomer depended not upon the question whether the amendment changed the name, but whether or not it changed the party. If the amendment only cured a mistake in the name of the real party by or against whom the suit was prosecuted, it could be made even after plea in abatement. And under the statutes of amendment so common in all the states, all kinds of misnomer are amendable when the change does not result in an alteration of the real party. Final v. Bachus, 18 Mich. 218; Elliott v. Clark, 18 N. H. 421; 14 Ency. Pl. and Pr., 304-5.

In Weaver v. Jackson, 8 Blackf. (Ind.) 5, a misnomer of the defendant's correct name was corrected by amendment after plea in abatement.

In Shackman v. Little, 87 Ind. 181, a like amendment was allowed after motion to quash the summons.

In Chicago, etc. R. Co., v. Johnston, 89 Ind. 88, misnomer of the defendant corporation was amended.

In Martin v. Coppock, 4 Neb. 173, it was held that an amendment of a summons correcting a misnomer of a party related back to the time of service of summons.

See also: Elliott v. Clark, 18 N. H. 421; Cheshire v. Wagon Co., 89 Ga. 249; Nelson v. Barker, 3 McLean (U. S.) 379; s. c., Fed. Cas. No. 10101; Bullard v. Bank, 5 Mass. 99; Heslep v. Peters, 4 Ill. 45; Parry v. Woodson, 33 Mo. 347; Webber v. Bolte, 51 Mich. 113; Welch v. Hull, 73 Mich. 47; McDonald v. Swett, 76 Cal. '257.

In this case it will be observed from an inspection of the exemplified copy of the record introduced in evidence that the single defect in the defendant's name was remedied by amendment after serving a copy of the written motion to amend on the defendant's attorneys. We insist, therefore, that the defendant appeared generally in the Illinois court, and that, therefore, that court having jurisdiction over the subject-matter of the action, also acquired jurisdiction over the person of the defendant, with full power to pass on all questions presented during the progress of the case, including the power to correct the slight misnomer in the defendant's name.

We repeat again that this is a collateral attack on this judgment. The defendant now claims that, being a foreign corporation, it was not subject to be sued in the Illinois courts. It never, however, asserted that claim in the circuit court of Cook county, Illinois, when the action was brought against it. Even if its claim was a valid one it did not choose to state the facts to the Illinois court and call into exercise the powers of that court in passing upon its claim. We therefore insist that it is elementary law that this judgment cannot now be collaterally attacked by setting up a defense which might have been raised in the original action. Snow v. Mitchell, 37 Kan. 636; Covington etc. Bridge Co. v. Sar-

gent, 27 Ohio State 233; Barton v. Radclyffe, 149 Mass. 275; Dudley v. Stiles, 32 Wis. 371.

This doctrine is well illustrated in numerous cases wherein it has been held that a judgment rendered against a person after his death in an action against him begun in his lifetime cannot be impeached in a collateral proceeding on that account *unless the fact of such defendant's death appear on the record.* Claflin v. Dunne, 129 Ill. 241, 21 N. E. 834, 16 Am. St. 263; McCornick v. Paddock, 20 Neb. 486, 30 N. W. 602; Mitchell v. Schoonover, 16 Ore. 211.

*Messrs. Whittemore & Cherrington* for respondent.

To acquire jurisdiction of a foreign corporation by service on its agent so that a judgment against it will be good in another State, it must *affirmatively appear in the record* that such foreign corporation was "doing business" in that State. Black on Judgments, sec. 910; St. Clair v. Cox, 106 U. S. 350, L. C. P. Co. Ed., Book 27, 222; Henning v. Planters Ins. Co., 28 Fed. 440.

Judgment against a foreign corporation based on service upon the president while temporarily in the State is not enforceable in other states, the corporation not being engaged in business or having an agent located in the State where the judgment was obtained. Cook on Corporations (5 Ed.), sec. 758.

As to what constitutes "doing business" within another State, the general conclusion is that isolated transactions, commercial or otherwise, by a corporation outside of the State of its domicile do not constitute "doing business" by such corporation in such other State. "Doing business" or "carrying on business" in a State other than that where the corporation is organized means, not the transaction of isolated business acts at long intervals of time, but the carrying on from week to week, and from month to month, of the ordinary corporate business, the business for which the corporation was organized. Goodhope Co. v. Railway

Barb Fencing Co., 22 Fed. 635; U. S. v. American Bell Telephone Co., 29 Fed. 17; Carpenter v. Westinghouse Air Brake Co., 32 Fed. 434; St. Louis Wire Mill Co. v. Consolidated Barb Wire Co., 32 Fed. 802; Clews v. Woodstock Iron Co., 44 Fed. 31; Cooper Manufacturing Co. v. Ferguson, 113 U. S. 727; Gilchrist et al. v. Helena etc., 47 Fed. 593; People v. American Bell Telephone Co., 117 N. Y. 241; Beard v. Union & American Publishing Co., 71 Ala. 60; Ware v. Hamilton-Brown Shoe Co., 92 Ala. 145; Sullivan v. Sullivan Timber Co., 103 Ala. 371; Kilgare v. Smith, 122 Pa. St. 48; Commonwealth v. Telephone Co., 129 Pa. St. 217; Commercial Bank v. Sherman, 43 Pac. 658; Barse Live Stock Co. v. Range Valley Cattle Co., 16 Utah 59; Commonwealth v. Standard Oil Co., 101 Pa. St. 119; 6 Thompson on Corporations, sec. 7936.

## STATEMENT OF FACTS.

The admitted facts in this case are, in substance, as follows: Plaintiff is now, and has been for ten years last past, a corporation, organized and existing under the laws of the State of New York, with its general office and principal place of business in the city of Chicago, State of Illinois. That defendant is now, and has been for ten years last past, a corporation organized and existing under the laws of the State of Utah, with its general office and principal place of business in Salt Lake City, Utah, and is engaged in the stove and hardware business. "That for a period of three years prior to the thirty-first day of July, 1897, the defendant had been ordering by mail, and from plaintiff's agent at Salt Lake City, Utah, goods, wares, and merchandise from the plaintiff herein, and from other parties doing business in said city of Chicago, and also purchased goods in said city of Chicago by and through its officers and agents. That P. W. Madsen is now, and has been for more than ten years last past, the duly elected, qualified and acting president and manager of the de-

fendant corporation. That on various dates between July 31, 1897, and February 21, 1898, the defendant purchased of and from the plaintiff various articles of goods, wares, and merchandise, which the plaintiff shipped to the defendant from Chicago, Illinois, and which the defendant received at Salt Lake City, Utah.'' It was further agreed as a fact that said Madsen, as president and manager of defendant corporation, was in Chicago, Illinois, on August 31, 1898, for the purpose of attending to numerous business matters for and in behalf of the defendant corporation. On August 30, 1898, the plaintiff commenced an action in the circuit court of Cook county, Illinois, against the defendant, under the name of the Utah Stone & Hardware Company, for $2,000, balance alleged to be due plaintiff from defendant for goods, wares, and merchandise sold and delivered to defendant by plaintiff. On the same day summons was duly issued out of said circuit court, and on the next day, August 31, 1898, the sheriff of Cook county, Illinois, served said summons on P. W. Madsen, president and manager of defendant corporation. Madsen was called as a witness in said case, and testified that he was in Chicago, Illinois, on August 31, 1898, and that while there an officer served on him a paper which he understood to be a summons in a lawsuit against his company, the Utah Stove & Hardware Company. The defendant company appeared in the action by its attorney, and on October 20, 1898, filed the following plea: ''And now comes the Utah Stove & Hardware Company, against whom the said Richardson & Boynton Company have sued out their said writ by the name of the Utah Stone & Hardware Company; says that said Utah Stove & Hardware Company is the correct and proper name by which it is known and called, and that the above name, to-wit, the Utah Stove & Hardware Company, is the only name by which the said corporation has heretofore been named and called; that P. W. Madsen was not, is not, and never was, president, manager, or other officer of the Utah Stone

& Hardware Company, as is by said writ supposed; and this the said Utah Stove & Hardware Company is ready to verify. Wherefore the said Utah Stove & Hardware Company prays judgment on said writ, and that the same be quashed," etc. "Jacob J. Kern, Atty. for Utah Stove & Hardware Co."

On May 2, 1900, plaintiff, by its attorney, served defendant's attorney with a written notice that on May 4, 1900, it would move the court in which the action was pending that "the summons and the sheriff's return thereon, and the declaration [complaint] in said cause, be amended by changing the letter 'n' to the letter 'v,' where the same occurs in the name of the said defendant, so as to make the name of the defendant in said cause the Utah Stove & Hardware Company." On said notice appears the following indorsement: "Received a copy of the above notice, together with a copy of the affidavit thereto attached, this third day of May, A. D. 1900. Kern & Fullen, Attorneys for the Utah Stove & Hardware Company, Defendant." The affidavit referred to as being attached to the foregoing notice set forth the facts upon which the motion to amend was based, and alleged that the action was in fact against the Utah Stove & Hardware Company, and that there was no such corporation as the Utah Stone & Hardware Company. On the same day the motion and affidavit were filed, the court made and entered the following order: "On motion of plaintiff's attorney, it is ordered that all papers herein be, and the same are hereby, amended by changing the name of defendant Utah Stone & Hardware Company to Utah Stove & Hardware Company." Thereupon plaintiff moved the court to strike defendant's plea from the files. Defendant's attorneys appeared in court and resisted the motion. The motion was sustained, and the plea stricken from the files. The defendant failing to plead further in the cause, a default in due time was entered, and judgment rendered against it, and in favor of plaintiff, for the amount shown to be due.

The record contains the following entry: "There-upon the defendant, having entered its exceptions here-in, prays an appeal from the order heretofore entered herein striking the plea from the files to the Appellate Court in and for the First District of Illinois, which is allowed upon filing its appeal bond," etc. Plaintiff brought suit in the Third Judicial District Court of this State to recover on the judgment rendered against defendant in the Illinois court. The complaint is in the usual form, and contains the allegations necessary to a recovery in suits of this kind. The defendant answered, and, among other things, alleged "that it was and is a non-resident of the State of Illinois, and that it never was duly or regularly cited to appear, and did not appear; that the summons was directed against the Utah Stone & Hardware Company, and not against the defendant." The court, in its ninth finding of fact, found "that this defendant corporation was never duly and regularly cited to appear, and did not appear, in said action, and said court never acquired jurisdiction over said defendant corporation therein, and said judgment rendered in said action against the defendant corporation was and is void." Judgment was accordingly entered in favor of defendant, dismissing the action. Plaintiff appeals.

McCARTY, J., after making the foregoing statement of the case, delivered the opinion of the court.

Appellant contends that the respondent corporation voluntarily appeared in the action instituted in the Illinois court, and thereby consented to the jurisdiction over its person, and that the findings and judgment of the trial court are erroneous and not supported by the evidence. Respondent, on the other hand, insists that the appearance in the Illinois court was a special or limited appearance, and made only for the purpose of filing the plea set out in the foregoing statement of the case, and was not such as, under the law and practice of this State, which is admitted to be the same as in the

State of Illinois, can be construed to be a general appearance for the purpose of giving the court jurisdiction to proceed to try the case, and render a judgment. Section 3334, Revised Statutes Utah 1898, provides as follows: "A defendant appears in an action when he answers, demurs, or gives the plaintiff written notice of his appearance, or when an attorney gives notice of appearance for him." Under the foregoing provisions of the statute, which are admitted to be the same as the provisions of the Illinois statute, the question as to whether the appearance of respondent in the Illinois court was a general or special appearance depends somewhat upon the character of the paper filed by it in the Illinois court. At common law, when a defendant was sued by a wrong name, if he desired to take advantage of the error, he could do so only by filing a plea in abatement. If he failed to so plead, he waived the irregularity, and could not raise the question of misnomer in his plea to the merits; the rule being to dispose of all dilatory pleas before pleading to the merits. 1 Chitty, Plead., 440, 441. While there is no such pleading designated by our Code as a "plea in abatement," yet the several defenses that were permitted to be raised by this plea under the common-law practice still exist, and may be pleaded in the answer as new matter. Allison v. Railroad, 42 Iowa 274; Dutcher v. Dutcher, 39 Wis. 651; Plath v. Braunsdorff, 40 Wis. 107.

Pomeroy, in his work on Code Remedies, section 698, says: "Defenses still exist of the same essential nature as those which were formerly set up by means of a plea in abatement, and a judgment thereon in favor of defendant does not forever bar the plaintiff from the further prosecution of his demand. They are governed, however, by the same rules of procedure that regulate all the other defenses which may be relied upon by a defendant. There is no difference in the methods of pleading them or trying them, or of adjudicating upon them. The only difference is in the respect to the conclusive effects of the judgments rendered upon them.

In other words, so far as concerns the manner of alleging and of trial, all distinctions between these two classes of defenses have been abolished, and both have been placed in the same category.'' Phillips on Code Pleading, at section 238, says: ''An answer in abatement sets up some matter of fact, the legal effect of which is to overthrow the pending action, without questioning the merits of the plaintiff's demand. Among the defenses that may be pleaded in abatement are misnomer. . . . As at common law a plea in abatement was required to give the plaintiff a better writ of declaration, so under the new system such answer must furnish information—such as the true name of defendant, where misnomer is pleaded—that will enable the plaintiff to cure the defect by amendment, if it be a defect that can be so cured.''

Bliss on Code Pleading, section 345, says: ''The Code requires the defendant either to demur or answer, and in his answer he is allowed to set up as many defenses as he may have. Only one answer is contemplated, and all the defenses which he elects to make must be embraced within it. Matter in abatement is as much a defense to the pending action as matter in bar.'' It will thus be observed that, whatever the pleading filed by the respondent in the Illinois court may be classed and denominated, it was in fact and in law an answer, and not a motion, as contended by respondent, and the filing of this answer constituted a general appearance.

Counsel for respondent have devoted much space in their brief to the discussion of the question of jurisdiction; claiming that the ''defendant was not doing business in the State of Illinois, and hence not amenable to the process of its courts unless it voluntarily appeared in the action.'' As above stated, the appearance of defendant was, under the statute, a general appearance, and the court acquired jurisdiction of its person. And further the respondent did not appear in the Illinois court for the purpose of raising the question of jurisdiction, nor did it at any time assail the juris-

diction of that court until after the bringing of this action. It is admitted that, at the time the action in the Illinois court was commenced, P. W. Madsen, as president and business manager of respondent company, was in the city of Chicago, State of Illinois, on business for and on behalf of respondent, and while there, as shown by the record, he was served with the summons referred to in the foregoing statement of the case. The defendant, in answer to the summons, appeared in court and filed the plea hereinbefore referred to, and which, it will be observed, in no way raised or challenged the jurisdiction of the court, but merely asserted that respondent had been sued by the wrong name. The plaintiff admitted the error, and asked that the record be amended, and that the suit proceed against defendant company in its true name, which the court permitted to be done. The respondent, having thus submitted itself to the jurisdiction of the court, cannot now by a collateral attack be permitted to successfully assail the judgment therein rendered. 1 Black on Judgments (2 Ed.), 245, 246, and cases cited.

We are of the opinion that the judgment rendered against respondent in the Illinois court is a valid and binding judgment, and that the ninth finding of the trial court herein is erroneous and not supported by the evidence. The judgment is therefore reversed, with directions to said court to proceed in accordance with the views herein expressed; costs of this appeal to be taxed against respondent.

BASKIN, C. J., and BARTCH, J., concur.