## Van Arsdale & Osborne v. Young.

No. 1981, Okla. T.   Opinion Filed May 14, 1908.

(95 Pac. 778.)

1.   INSURANCE—Premium Notes—Defenses—No Policy Delivered. Where, in an action on a promissory note, execution and delivery of which is admitted, which was given for insurance, the contract and application contemplated the issuance, and delivery of a policy, and none was delivered, on a defense of no consideration the defendant sustains the burden placed on him, by showing that he received no policy nor any notice that the application had been approved.

2.   SAME—Evidence—Acceptance of Application.   Where an application for hail insurance provides that the insurance company shall not be bound until the application is accepted and approved at its home office, in a suit on a note given for such insurance it is incumbent on the holder thereof to show such approval and acceptance, or acts tantamount thereto, in order that he be entitled to recover.

(Syllabus by the Court.)

*Error from District Court, Kay County; before Bayard T. Hainer, Judge.*

Action by Van Arsdale & Osborne against A. Young to recover on a promissory note given on the 28th day of April, 1902, in the sum of $22.50, and $10 attorney's fees.   Judgment before a justice of the peace was rendered for the defendant, as it was also in the district court, and plaintiffs bring the case here by proceedings in error.   Affirmed.

*William Keith* (*Kos Harris* and *Green, Martin & Tibbetts,* of counsel), for plaintiffs in error.
*John S. Burger,* for defendant in error.

Dunn, J.   The note in question was given in payment of a premium for a contract of hail insurance in the St. Paul Fire & Marine Insurance Company, which plaintiffs represented.   The

evidence shows that defendant signed the application for insurance and the note in payment therefor on the same day, and delivered them to the local agent, Yoeman, at Billings, Kay county, Okla. Yoeman sent them to the plaintiffs at Wichita, Kan., and plaintiff Van Arsdale, testifying in reference to the disposition that was made of the application on its arrival at Wichita, says:

"We received it from J. W. Yoeman, our agent at Billings, Okla., on May 1, 1902, and approved the application on the date of receiving it, and forwarded it, on the same day, through the United States mail, to the home office of the St. Paul Fire & Marine Insurance Company at St. Paul, Minn., for their acceptance, approval, and issuance of the policy."

The application, signed by the defendant, so far as the same is pertinent to this inquiry, reads as follows:

"I, A. Young, of Owens Tp., postoffice Owens, in the county of Kay, in the state of Oklahoma, hereby make application to the St. Paul Fire Marine Insurance Company, for insurance upon growing grain against damage by hail only, for the season of 1902, to the amount of 500 dollars, from the day this application is accepted and approved at the home office of the company, at St. Paul, at 12 o'clock noon, until September 15, 1902, at noon, and in no event shall the company be liable after the grain is cut," etc.

It also contains this further stipulation:

"I hereby declare the above statement of number of acres is true. That I know this application does not bind the company until received and approved at its general office in St. Paul, Minn."

The proof also shows that the application in question contained an instruction that the policy was to be sent to the local agent. This was signed by the local agent. The defendant testified that the policy was to be sent to him, showing that, at least in contemplation of the parties, a policy was to be issued and was for delivery to the defendant.

The defendant on the trial admitted the execution and delivery of the note and the application, which placed the burden of proof upon him, and he sustained this by showing that he re-

ceived no policy. To this evidence the plaintiffs interposed a demurrer, which was by the court overruled, and it is assigned as one of the errors, plaintiffs insisting that it was incumbent upon the defendant to show not that he received no policy, but that the application which he made had not been accepted and approved at the home office of the company. Generally speaking, this would probably be true, as this was required in order to complete the contract between the parties, but the evidence of its completion, which all parties understood defendant was to have, was a policy. He received none, and although he repeatedly visited the agent to whom it was to be sent, and requested it, none was delivered to him, nor did he receive any reliable information or notice that the company had accepted and approved his application. The evidence of the acceptance and approval, if it existed, was entirely in the hands of the opposite party. It was an easy matter, not a difficult one, for them to have established it beyond cavil or controversy, and it was a difficult one for defendant to have established its absence. 16 Cyc. p. 936, and authorities cited. This being true, we beleive that there was no error in the court overruling the demurrer to the evidence.

The plaintiffs then undertook to establish by evidence that the application had been accepted and approved at the home office of the company at St. Paul, Minn., in accordance with its terms. To do this, the application was offered in evidence, which had stamped upon it the words: "Approved May 3d, 1902." It was not shown by whom this was placed upon the application, where it was placed upon the application, nor when, nor indeed was any evidence whatsoever offered in reference to it, further than it was upon the same when identified by witness Yoeman on the trial. Under the terms of the contract, it will be noted that the application did not bind the company "until received and approved at its general office in St. Paul, Minn.," and, further, that the insurance would run "until September 15, 1902, at noon, and in no event shall the company be liable after the grain is cut." So that, to have fixed any liability on the company, it was

necessary that the application be accepted and approved at the home office of the company in St. Paul, Minn.; and this prior to the time when the grain was cut, and, at farthest, September 15, 1902. This must have been shown by the actual approval, or by acts tantamount thereto. There was no evidence on this point before the court, and none offered.

It is contended however, on the part of plaintiffs, that the retention of the application and of the note, without any action whatsoever on the part of the company, was sufficient to constitute the contract. We cannot give our assent to this doctrine because of the plain provisions of the application, which have been construed by many courts. See 16 Am. & Eng Ency. of Law, p. 851; *Alabama Gold Life Ins. Co. v. Mayes,* 61 Ala. 163; *Pickett v. Insurance Co.,* 39 Kan. 697, 18 Pac. 903; *Insurance Company v. Johnson,* 23 Pa. 72; *Heiman v. Phoenix Mut. Life Ins. Co.,* 17 Minn. 153 (Gil. 127) 10 Am. Rep. 154; *Jacobs v. New York Life Insurance Company,* 71 Miss. 658, 15 South. 639; *Allen v. Mass. Mutual Accident Association,* 167 Mass. 18, 44 N. E. 1053; *Coker v. Atlas Accident Insurance Company* (Tex. Civ. App.) 31 S. W. 703. The text in Am. & Eng. Ency. of Law, *supra,* is as follows:

"If, however, the application provides that no liability shall attach to the agent's acceptance until the application has been approved by the home office, the company is not liable if the person upon whose life the insurance is placed dies, or if the property which is the subject of insurance is destroyed or damaged, before the application is approved. The acceptance must be signified by some act. The delay of the insurer in accepting or rejecting the proposal for insurance does not take the place of assent."

If the company was not liable on its insurance contract, then it necessarily follows that the defendant was not liable on his note.

There was some evidence offered showing that a policy was issued on his application, but nothing whatever was shown as to its terms, who, if any one, was insured under it, and what property it covered. It was not offered in evidence, nor was any foundation laid or effort made to establish the same by secondary evidence.

Exceptions are taken to a number of instructions given by the court, which are all hypothecated upon the propositions that the acceptance and approval of the application had taken place, and that the defendant was, in fact, insured. As there was no evidence upon this controlling factor in the case, plaintiffs were not prejudiced by the instructions.

This case has been twice tried. In the justice of the peace court, defendant was given judgment; and, the plaintiffs appealing to the district court and trial being had before a jury, verdict was again rendered in favor of defendant. A motion for new trial was then offered to that court, averring that the verdict was not sustained by the evidence and was contrary to law. On consideration thereof the court overruled the same, and from an investigation of the record we have come to the conclusion that the evidence reasonably tends to sustain it.

Finding no error, the judgment is accordingly affirmed.

All the Justices concur.