Davis, J.
There is a well defined distinction, maintained in the cases, between a parol contract to insure or to issue an insurance policy, and a parol contract of insurance. Cases within the latter class, in order to be enforceable, must not be executory, but must take effect immediately on the making of the agreement. Taylor v. Phoenix Ins. Co., 47 Wis., 365; Myers v. Liverpool, etc., Ins. Co., 121 Mass., 338; Idaho Forwarding Co. v. Fireman’s Fund Ins. Co., 8 Utah, 41.
Nowhere in the record of this case do we find any evidence of a parol contract of insurance in praesenti. Whatever verbal agreement was made, if any agreement was ever consummated, was to *317 take effect in futuro, on the execution and receipt of the plaintiff's application therefor and its acceptance by the insurer; and such is the averment of the plaintiff in his petition and his testimony on the trial. Nothing different appears anywhere in the record. In the evidence, there is not even a suggestion of a preliminary contract with the defendant for insurance to take effect prior to the application. There is some evidence tending to show that there was an agreement to issue a policy of even date with the application; but this is disputed, the agent asserting that there was never any agreement as to the rate of premium to be paid and that he only said to the plaintiff that he' would try to place the insurance in some company, at the rate which plaintiff said was all he would pay. He is supported in this by the undisputed fact that he did try in one company, in the same manner as with the defendant, and failed; and that he thereafter proceeded with the defendant, notifying the plaintiff that he would hold the policy until he should have time to hear from the company.
The defendant was never, even by implication, a party to any contract, verbal or written, until the plaintiff made his written application to the defendant (2 Clement on Fire Insurance, 574, Rule 15). It is a conceded fact that the agent with whom the plaintiff dealt was the agent of several companies and that his undertaking was to get the insurance “in some stock company,” not any particular one; but the defendant was not a party to, or known in, any negotiations until the agent had tried to get the insurance in another company and it had refused the risk on account *318 of the rate proposed, nor until an application for insurance had been made directly to the defendant. The plaintiff, therefore, must recover, if at all, upon his alleged written contract as contained in the application and the policy which he claims was issued thereon. Thus is raised a pure question of law, which we think was erroneously resolved in both of the lower courts.
This question was presented to the trial court in this form: Do the facts proved in this case show that the Hartford Fire Insurance Company had entered into a contract with the plaintiff to insure the plaintiff’s building and that such contract -was subsisting at the time the plaintiff’s building was destroyed by fire? We have already disposed of the contention that there was an oral contract. It is admitted that the plaintiff made a written application to be insured in the defendant company, which was dated June 26, 1903, and was received by the agent about July 1, 1903; and it is admitted that the application was for insurance, on building and household goods, to the amount of one thousand dollars at the rate of $1.90 per hundred,' making the premium for one year nineteen dollars. It is admitted that the agent wrote to the plaintiff on July 3, 1903, as follows: “I have issued a policy covering on your property. Will hold policy until I have time to hear from the company.” It also clearly appears that the rate proposed in the application was very much below the regular rate for such a risk. It is also conceded that the agent had the authority to fill out and countersign policies; and that he did fill out • and countersign a policy to the plaintiff, which he did not deliver, but which was never out *319 of his possession until the company declined the risk, when he mailed it to the company. The policy is stamped by the company, “Received July 9, I9°3\
It is a general rule that delivery is necessary to the validity of a written instrument. Nevertheless, the actual delivery or non-delivery of a policy of insurance is not always the final test of the completion of a contract of insurance, unless there is such a stipulation in the application or the policy as makes delivery a condition precedent to the consummation of the contract. Actual delivery of the policy may be very strong evidence of the consummation of the contract; but it is not of the essence of the contract, because possession of the policy is not conclusive. The insured may have obtained possession of the policy upon conditions, or by fraud, while possession by the insurer after the minds of the parties have met and the preliminary conditions have been performed by the insured, may be wrongful (Vance on Insurance, 173). A contract of insurance is consummated upon the unconditional acceptance of the application of the insured by the insurer. New York Life Ins. Co. v. Babcock, 104 Ga., 67; More et al. v. New York Bowery Fire Ins. Co., 130 N. Y., 537; Walker v. Farmers’ Ins. Co., 51 Iowa, 679; Newark Machine Co. v. Kenton Ins. Co., 50 Ohio St., 549.
It is argued in this case that the agent, having full power to do so, countersigned and issued a policy in accordance with the application, and notified the plaintiff that he had done so; and that having done so, his act bound the company as an acceptance of the application and as a constructive *320 delivery of the policy. Yet, while the agent wrote to the plaintiff that he had “issued” a policy, it is clear that he meant no more than that he had written it and signed it, and he coupled with this information the further statement that he would “hold” it until he had heard from his principal; and it is beyond dispute that he did so hold it and that the insurance company refused the risk, whereupon he sent it to the company according ■to the custom in such cases. All this is inconsistent with the idea of an acceptance or of a holding of the policy by the agent for the plaintiff.
“Delivery is largely a question of intention, as evidenced by words or acts. The requisites of a valid delivery may be said to be three: (1) There must be an intention on the part of the person executing the policy to give it legal effect as a completed instrument; (2) this intention must be evidenced by some word or act indicating that the insurer has put the instrument beyond his legal control, though not necessarily beyond his physical control; and (3) the insured must acquiesce in this intention” (Vanee on Insurance, 169).
In the absence of an orai agreement for insurance prior to the policy, if a policy has been duly executed but has not passed out of the possession of the ■ insurer or his agent and no payment of premium has been made, the contract is prima facie incomplete; and it rests upon the party who asserts that there is a contract, to show that the policy became operative by the intention of both parties (Elliott on Insurance, Section 31). In the absence of any other evidence to show assent of the company to the making of a contract'of in *321 sur anee, delivery of the policy must be shown (19 Cyc., 603). See Newark Machine Co. v. Kenton Ins. Co., 50 Ohio St., 349.
Upon the foregoing principles the Supreme. Court of Iowa held that where an agent of an' insurance company made out a policy of insurance to the plaintiff and left it in the hands of a third party until he could learn whether the company would accept the risk or not and the company did refuse to accept it, there was • no delivery of the policy and no consummated contract of insur'ance, and the court said: “We think the verdict should have been promptly set aside because there was no evidence to support it.” Brown v. American Central Ins. Co., 70 Iowa, 390.
In order to establish the relation of insurer and insured as existing before the delivery of the policy, the plaintiff must do so by full and clear proof (Kerr on Insurance, 53, 88, Sections 33, 47); Suydam et al. v. Columbus Ins. Co., 18 Ohio, 459. We think that the plaintiff stopped very far short of proving the claims which he makes in his petition. And with respect to the allegation in the petition that the plaintiff relied on the notice that the agent was holding the policy, and therefore gave the matter of insurance no further attention, it is perhaps sufficient to again call attention to More et al. v. N. Y. Bowery Fire Ins. Co., 130 N. Y., 537, in which it is said, on page 547: “And it may be added that a person is under no obligation to do or say anything concerning a proposition which he does not choose to accept. Our opinion is that when an application for insurance is made, and its rejection is not signified, no presumption of its acceptance can be *322 indulged in. There must be actual acceptance, or there is no contract.”
The court of common pleas therefore erred in ■overruling the request of the defendant to direct a verdict for the defendant and in rendering judgment on the verdict. It follows that the judgment of the circuit court was also erroneous.

Reversed and judgment for plaintiff in error.

Shauck, C. J., Price, Crew, Summers and Spear, JJ., concur.